# NORTHERN PACIFIC RAILWAY COMPANY v. HARRIET A. BARLOW.

(126 N. W. 233.)

**Appeal and Error — Appealable Orders — "Involves Merits."**

1. In November, 1903, at the instance and request of plaintiff's counsel, a stipulation was entered into embracing the facts relevant to all the issues except one. Such stipulation was entered into in good faith, without fraud or any attempt to deceive plaintiff's counsel, and after most careful consideration. Defendant's counsel in good faith relied upon such stipulation for nearly six years. In March, 1908, the cause was tried and submitted upon such stipulated facts and certain testimony relevant to the issue not covered by the stipulation. In May following the trial court made its findings of fact and conclusions of law favorable to plaintiff, and ordered judgment accordingly, which was entered pursuant thereto on May 14, 1908. Defendant's counsel thereafter took steps to settle a statement of the case preparatory to appealing to this court, and on July 25, 1908, on application of plaintiff's counsel, an order was made requiring defendant to show cause why an order should not be made vacating and setting aside such findings of fact, conclusions of law,

Note.—On appealable and nonappealable orders, see note to Olson v. Mattson & Storby, 16 N. D. 233.

order for judgment, and judgment, and also why plaintiff should not be relieved from a portion of such stipulation of facts, or why such stipulation of facts should not be modified by eliminating such portion, or why the parties should not be relieved *in toto* from such stipulation. Upon the return of such order to show cause, and after the due hearing, the order complained of was made vacating the findings, conclusions, order for judgment, and judgment.

*Held* (1) that such order, in so far as it vacates the findings of fact and relieves the parties from such stipulation, is appealable under subd. 4, § 7225, R. C. 1905, upon the ground that it " 'involves the merits' of the action or some part thereof."

**Grant of New Trial.**

2. Whether such order, in effect, grants a new trial, and therefore is appealable under the provisions of subdivision 3 of said section, not determined.

**Appeal and Error — Setting Aside Stipulation — Discretion of Trial Court.**

3. While trial courts may, in the exercise of a sound judicial discretion, and in furtherance of justice, relieve parties from stipulations which they have entered into in the course of judicial proceedings, and while this court, sitting as a court of review, will not interfere with nor control the exercise of such discretion thus vested in trial courts, except in cases of a clear abuse of such discretion, the facts presented disclose a manifest abuse of discretion in granting the order appealed from.

**Stipulation — Grounds of Vacating.**

4. The making of such stipulations should be encouraged rather than discouraged by the courts, and enforced unless good cause is shown to the contrary, and applications to be relieved from stipulations should be seasonably made. Parties will not be relieved from such stipulations in the absence of a clear showing that the fact or facts stipulated are untrue, and then only when the application for such relief is seasonably made, and good cause is shown for the granting of such relief. The facts in the case at bar do not bring the application within these requirements.

· Opinion filed April 15, 1910.

Appeal from the District Court, Foster county; *Edward T. Burke*, J. Action by the Northern Pacific Railway Company against Harriet A. Barlow. Judgment for plaintiff, and defendant appeals.

Reversed.

*John Knauf*, for appellant.

A stipulation of facts between litigants has the force of a contract, or a verdict of a jury, and requires the same, or as strong reasons, to set it aside or vacate it. Bingham v. Winona County, 6 Minn. 136,

Gil. 87; Rogers v. Greenwood, 14 Minn. 333, Gil. 256; 1 Greenl. Ev. 206; Gresley, Eq. Ev. 457, 460.

Stipulations are encouraged by courts. Lewis v. Sumner, 13 Met. 269; Burbank v. Rockingham Mut. F. Ins. Co. 24 N. H. 550, 57 Am. Dec. 300.

*Ball, Watson, Young, & Lawrence,* for respondents.

Stipulations have no particular sanctity on account of being made in judicial proceedings, and may be set aside when made under mistake of fact. Beaumont Pasture Co. v. Preston, 65 Tex. 448; Cent. Dig. col. 3122; McClure v. Sheek, 68 Tex. 426, 4 S. W. 552; Sperb v. Metropolitan Elev. R. Co. 57 Hun, 588, 32 N. Y. S. R. 934, 10 N. Y. Supp. 865; Levy v. Sheehan, 3 Wash. 420, 28 Pac. 748; Wells v. American Exp. Co. 49 Wis. 224, 5 N. W. 333; Barry v. Mut. L. Ins. Co. 53 N. Y. 536.

Relief will be granted when prejudice will result if the stipulation is allowed to stand. 20 Enc. Pl. & Pr. pp. 607, 664; Sperb v. Metropolitan Elev. R. Co. supra.

This action was commenced in September, 1902, for the purpose of quieting title to a certain strip of land used as a right of way by plaintiff Railway Company. The complaint is in the statutory form. In November of said year issue was joined by answer, in which defendant claims title to the land in controversy as the widow, sole heir, and devisee of one Frederick G. Barlow, deceased.

The other facts necessary to a proper understanding of the case are embraced in the following stipulation of facts which was entered into by counsel on November 8, 1903:

## Stipulation of Facts.

The following facts are hereby stipulated to be true:

1st. That at all times since the 17th day of September, A. D. 1881, the Jamestown & Northern Railroad Company was, and now is, a railroad corporation, organized under and existing by virtue of the laws of the Territory of Dakota, now state of North Dakota, and chartered to build a line of railroad from Jamestown, North Dakota, in a northwesterly direction through Stutsman, Foster, Eddy, and Ben-

son counties to the west end of Devil's Lake. After its organization, as aforesaid, the said Jamestown & Northern Railroad Company authorized and directed the survey of a line of route for a railroad from a point near the city of Jamestown, in a northwesterly direction through the counties of Stutsman and Foster, in said territory of Dakota; said survey was commenced on the 1st day of September, 1881, and completed on the 30th day of October, 1881, and in its course passed across the land described in the complaint herein. A map or plat representing such survey was prepared, and on the 5th day of October, 1882, said company by resolution of its board of directors adopted said line of route so surveyed and as represented on said map as the definite location of a section of its line of route between the points mentioned.

2d. Thereafter said Jamestown & Northern Railroad Company transmitted to the Secretary of the Interior a copy of its articles of incorporation, certified by the secretary of Dakota territory; also a certificate of its organization, under the law of the said territory of Dakota, made by its secretary, and an affidavit of its president, designating the officers of said corporation, all of which papers were received in the Department of the Interior on January 26th, 1883.

3d. The land in controversy in this action is situated in the land district of the United States land office at Fargo, and has been so situated at all times. On June 7th, 1893, the records of the United States land office at Fargo, North Dakota, were destroyed by fire. At this time the records of the land office do not contain any profile or map of plaintiff's railroad over the land in question. Tract book No. 15, of said land office, is a copy of the original tract book which was destroyed by fire on June 7th, 1893, which said copy now contained in the land office at Fargo, was furnished to said office by the General Land Office of the United States, and was made up from the records there kept. Upon such tract book No. 15, and in the plat therein contained relating to township 147, range 66, there is traced across said plat in red-ink marking, a line extending through said township, which line running upon said course bears small cross marks such as is generally used in map making, to indicate a railroad, and which line also has connected with it in red ink the words "Jamestown Northern," with a red-ink arrow pointing north parallel with said line. In the same tract book No. 15, the other plats of townships, both north and

south of the one last referred to, are found similar lines with similar markings, and it all put together shows a continuous line of something apparently indicating a railroad and which is called "Jamestown Northern." In the operation of United States land offices, all original documents such as homestead entries and homestead and pre-emption proofs, are regularly forwarded by the local land office to the General Land Office at Washington, where the same are kept as original records.

A profile and map were made containing the following indorsements, and no others, namely: "Part of map of definite location of Jamestown & Northern Railroad from junction with Northern Pacific Railroad to north line of Foster county, Dakota territory, Brainard, December 30th, 1882. P. H."

State of Minnesota,⎫ ss.
County of Crow Wing. ⎭

A. Anderson, of Brainard, in said county and state, being duly sworn, says that he is the engineer in chief of the Jamestown & Northern Railroad Company; that the survey of the line or route of said road from its junction with the Northern Pacific Railroad to the north line of Foster county, and territory of Dakota, was made under his direction as engineer in chief of the company, and under its authority, commencing the 1st day of September, 1881, and ending on the 30th day of October, 1881, that such survey is accurately represented on the accompanying map.            A. Anderson, Engineer in Chief.

Subscribed and sworn to before me this 28th day of December, 1882.

Rich Relf, Notary Public.

I, George Adams, do hereby certify that I am the president of the Jamestown & Northern Railroad Company: that A. Anderson, of Brainard, who subscribed the foregoing affidavit, is the chief engineer of the company; that the survey of the line of route of the company's road as accurately represented on this map, was adopted by the company by resolution of its board of directors, on the 5th day of October, 1882, as the definite location of the road, from its junction with the Northern Pacific Railroad to the north line of Foster county, in Dakota territory, and that the map has been prepared to be filed for the approval of the Secretary of the Interior in order that the company may obtain the benefit of the act of Congress, approved March 3d,

1875, entitled, "An Act Granting to Railroads the Right of Way through the Public Lands of the United States."

                    Geo. H. Adams, President of the James-
                              town & Northern Railroad Company.
Attest: Sidney Starbuck,
                    Secretary.
[Seal.]

Z. B. S., Department of the Interior, June 26th, 1883, J. K. McC. Approved subject to any existing rights of the Northern Pacific Railroad Company.

Department of the Interior, General Land Office, Washington, D. C., April 29th, 1897.

I, Binger Herman, Commissioner of the General Land Office, do hereby certify that the annexed tracing is a true and literal exemplification of a part of a map of definite location of the Jamestown & Northern Railroad, approved by the Secretary of the Interior, on June 26, 1883, and now on file in this office.

In testimony whereof, I have hereunto subscribed my name and caused the seal of this office to be affixed at the city of Washington, on the day and year first above written.

                    Binger Herman,
                              Commissioner of General Land Office.
[Seal.]

That the map of definite location above referred to, and approved by the Secretary of the Interior on June 26, 1883, was filed in the United States land office at Fargo, sometime during the month of August, 1883.

4th. By deed of conveyance properly executed and delivered, the said Jamestown & Northern Railroad Company duly conveyed to the plaintiff herein, on April 21st, 1898, the line of railroad of the said Jamestown & Northern Railroad Company, including the road as constructed over the land described in the complaint herein, and including all of the right, title, and interest of the said Jamestown & Northern Railroad Company, in and to the right of way occupied by it over the land described in the complaint, and that thereafter said deed of conveyance was duly recorded in the office of the secretary of the state of North Dakota, and that the plaintiff herein has succeeded to all the

rights of the said Jamestown & Northern Railroad Company, if any it had, in and to the right of way occupied by the defendant over the land mentioned in the complaint; that the southwest quarter (S. W. ¼) of section six (6), township one hundred and forty-seven (147), range sixty-six (66), Foster county, Dakota territory, was public land of the United States; said tract was surveyed by the government sometime prior to October 2d, 1884, and on said last-mentioned date the plat of survey thereof and of the township in which said quarter section is situated, was recorded in the United States land office at Fargo, North Dakota.

5th. Plaintiff has not, nor did its predecessor in interest at any time institute proceedings or resort to any process whatever under the state or Federal laws, to condemn a right of way across said land, or to divest defendant or her predecessors in interest of her or their title, or any predecessor claim that she or they might have to said land, other than the filing of the map of definite location, as hereinbefore set forth. Plaintiff and its predecessor in interest, the Jamestown & Northern Railroad Company, have taken for use as a right of way upon said land, a strip 200 feet wide, being 100 feet on each side of the center line of its said railroad, and extending across said land, and which strip includes ———— acres; defendant and her predecessors in interest have not at any time consented to the taking or use of said land by plaintiff, and has not received any compensation for said taking or for the injury and damage, if any, inflicted thereby.

6th. On and prior to the 22d day of July, A. D. 1883, the land in controversy, to wit: southwest quarter (S. W. ¼) of section six (6) in township one hundred and forty-seven (147) north of range sixty-six (66), west of the fifth principal meridian, was unsurveyed public land of the United States, agricultural in character, not reserved from sale and was subject to settlement under the pre-emption law of the United States then in force. On said 22d day of July, A. D. 1883, Frederick G. Barlow was a citizen of the United States, over the age of twenty-one years, had never had the benefit of the pre-emption laws of the United States, was not the proprietor of 320 acres of land in any state or territory, had not quit or abandoned his own land or his residence thereon to reside on the said land above described, and was, in all respects, legally qualified to initiate proceedings under the pre-emption

laws of the United States to obtain title to 160 acres of land agricultural in character from the public lands of the United States.

7th. On said 22d day of July, A. D. 1883, intending to make entry of the said land herein described when the same was surveyed, and to acquire title to the same by virtue of compliance with the pre-emption laws of the United States, said Frederick G. Barlow settled upon said land and took up his residence thereon. At the time of such settlement there was not a railroad track laid or line of railroad in operation across said land at any place, nor had plat or profile of the section of railroad extending across said land hereinbefore referred to been filed in the United States district land office at Fargo.

8th. From the date of his said settlement, said Frederick G. Barlow continuously resided on said land, and made the same his home, and cultivated and improved the same, until a survey thereof was made; and on the 8th day of October, A. D. 1884, and within ninety days after the receipt at said district land office of the approved plat of the township embracing his said pre-emption settlement, said Frederick G. Barlow filed in said district land office at Fargo, a written statement describing the said land so settled upon him and declaring his intention to claim the same in accordance with the pre-emption laws of the United States, alleging settlement upon said tract as of the 22d day of July, A. D. 1883, as aforesaid.

9th. Thereafter, having continued his residence upon and improvement of said land, according to law, on or about the 6th day of July, A. D. 1885, after due notice of his intention so to do, said Frederick G. Barlow made final proof of his entry, settlement, residence upon, and improvement of said land as aforesaid, and the payment required by law, and submitted the same to the register and receiver of said district land office at Fargo; and on said 6th day of July, A. D. 1885, received from said district land office a final certificate of entry of said land. Thereafter, pursuant to the said settlement, entry, and final proof of said Frederick G. Barlow upon said land, as aforesaid, there was issued and delivered to him by the government of the United States, a patent, dated November 7th, A. D. 1888, granting and conveying to him in absolute fee simple the said land by the description hereinbefore given, without limit, reservation, or deduction of any kind or to any extent whatever.

10th. Said Frederick G. Barlow continued to hold the said land under the grant and title thereto acquired by him as hereinbefore set forth, until the time of his death, in or about the year 1901; at which time he was, with the defendant herein, occupying said land as a homestead under the law of this state. The defendant is the widow and sole heir and devisee of said Frederick G. Barlow, and is still occupying said land as her homestead, and is invested with all estate and title thereto acquired and held by said Frederick G. Barlow at the time of his decease.

Dated November 8, A. D. 1903.

Ball, Watson, & Maclay,
Attorneys for plaintiff.
S. E. Ellsworth,
Attorney for defendant.

The cause was not brought to trial until March, 1908, at which time the same was tried upon the above stipulation and certain testimony relative to the date when the railway company constructed its grade and roadbed over the land in question. On May 11, 1908, the trial court made findings of fact and conclusions of law favorable to plaintiff, and ordered judgment accordingly, and judgment was rendered pursuant thereto on May 14, 1908.

Thereafter, and on July 25, 1908, an order was made requiring defendant to show cause why an order should not be made vacating and setting aside such findings of fact, conclusion of law, order for judgment and judgment, and also why plaintiff should not be relieved from the last clause of the 7th paragraph of the stipulation of facts; and why said stipulation of facts should not be modified by excluding and striking therefrom said clause; or at the opinion of the defendant why all of said stipulation should not be vacated and set aside and both parties relieved therefrom. Such order to show cause was issued upon the affidavit of J. S. Watson, one of plaintiff's attorneys, and on the return thereof defendant's attorney submitted his affidavit in opposition to the granting of the relief prayed for. These affidavits are quite lengthy and need not be set out at length. The affidavit of plaintiff's counsel is to the effect that such stipulation was entered into, containing the clause aforesaid, through mistake, inadvertence, and excusable

negligence, and that the clause thus incorporated in the stipulation is not according to the facts. The affidavit of defendant's counsel sets out, in detail, the correspondence between the respective counsel had prior to entering into such stipulation, and tends to refute the contention that such stipulation was entered into through mistake or inadvertence on the part of plaintiff's counsel. Such affidavit also contains the following recitals:

"At all times since the beginning of the above-entitled action affiant has proceeded upon the theory that, at the time of the settlement of Mr. Barlow upon the land involved, the map of definite location of the railway extending across the land had not been filed in the United States district land office at Fargo. The defense to said action was prepared upon that theory, and had it been shown by any satisfactory proof that this map or profile had been filed in the United States district land office at Fargo prior to July 22d, 1883, affiant would have advised against any defense to the action. He believed at all of the times hereinbefore mentioned that the point at issue in this case was identical with that in the Doughty Case, and was induced to bring the case to trial in March, 1908, solely upon that consideration. For a period of about five years he has acted upon the belief that the clause contained in the latter part of the 7th paragraph of the stipulation of fact was executed, and intended to be executed, in good faith by counsel for plaintiff, and has based his entire action in the case largely, if not entirely, upon this important and material element of the stipulation of fact.

"The admission by plaintiff of the matter contained in this clause of the stipulation of fact was an inducement to affiant to execute this stipulation on his part, and that if said clause had not been included in the stipulation of fact it would not have been executed on the part of affiant. Affiant has at all times during the continuance of said action relied and acted upon the truth of the matter contained in this clause, and, if a stipulation of fact had not been made, could have supplied proof upon the trial of the facts in said clause contained."

Thereafter, and on August 29, 1908, the trial judge made an order vacating and setting aside the findings of fact, conclusions of law, order for judgment, and judgment, and also vacating and setting aside *in toto* the stipulation of facts aforesaid, and relieving both parties from the

same. From such order this appeal is prosecuted. Appellant complains of that portion of the order merely which vacates the stipulation of facts and relieves the parties from the force and effect thereof.

FISK, J. (After stating the facts as above). It is strenuously insisted by respondent's counsel that the order complained of is not appealable. As to that portion of the order vacating the judgment, such contention is no doubt sound. The judgment was adverse to defendant, hence she was not aggrieved by the order vacating the same, but the order goes much farther than a mere vacation of the judgment; it sets aside the findings of fact and, in fact, grants a new trial. Not only this, but it goes farther and nullifies and destroys a solemn stipulation entered into between the parties covering most of the facts relevant to the issues involved and relegates the parties to the original positions in the action at the time the answer was served nearly six years prior thereto. If permitted to stand, such order necessitates, not only a retrial of the case from the beginning, but deprives defendant of the benefit of such stipulation, compelling her to entail expense and trouble incident to procuring evidence covering the issue disposed of by the stipulation. We deem it reasonably clear that such order "involves the merits of the action or some part thereof" within the meaning of subd. 4, § 7225, Rev. Codes 1905, and is therefore appealable. It would, indeed, be strange if the rule was otherwise, as it would result in depriving defendant of the right to have such order reviewed. Important and substantial legal rights of defendant are destroyed by such order, and no redress is afforded her unless she may appeal therefrom. Manifestly no right of review is afforded her under the provisions of § 7226, Rev. Codes. That section reads: "Upon an appeal from a judgment the supreme court may review any intermediate order or determination of the court below, which involves the merits *and necessarily affects the judgment.*" Such order may or may not affect the ultimate judgment to be rendered, and under the plain wording of said section the order is not reviewable on an appeal from the final judgment, unless it necessarily affects such judgment. The case of Bolton v. Donavan, 9 N. D. 575, 84 N. W. 357, is in point upon the last proposition and also sustains our views above expressed to the effect that the order complained of is appealable. Subdivision 4 of

§ 7225, supra, is there construed, and it is held that the phrase "involves the merits" must be interpreted so as to embrace orders which pass upon the substantial legal rights of the suitor, whether such rights do, or do not relate directly to the cause of action or subject-matter in controversy, and authorities are therein cited from the states of Wisconsin, South Dakota, and Minnesota in support of the rule of construction thus announced. In addition to the authorities cited in Bolton v. Donavan, see the recent case of Plano Mfg. Co. v. Kaufert, 86 Minn. 13, 89 N. W. 1124, to the same effect and which cites with approval the two early Minnesota cases criticized by respondent's counsel in their brief.

The authorities relied upon by respondent's counsel in support of their contention that the order, in so far as it vacates the stipulation of facts, is merely an interlocutory order, and not appealable, are not in point under a statute like ours, and it would serve no useful purpose to review them here.

In support of our view that the order is appealable, see 20 Enc. Pl. & Pr. p. 669, and cases cited under notes 10 and 11. It will be noticed that the cases therein cited are all from the states of New York, Minnesota, and Wisconsin, each of which have a statute the same as subd. 4, § 7225, supra.

Our conclusion upon this feature of the appeal is that the order, in so far as it vacates and sets aside the findings of fact and relieves the plaintiff of the force and effect of the stipulation, is appealable upon the ground that it involves the merits within the meaning of subd. 4, § 7225, aforesaid. In view of this conclusion we need not determine whether it is also reviewable under the last clause of subdivision 3 of said section, upon the ground that it, in effect, grants a new trial.

This brings us to the merits. That trial courts may, in the exercise of a sound judicial discretion for good cause shown and in furtherance of justice, relieve parties from stipulations which they have entered into in the course of judicial proceedings, is elementary. It is equally well settled that an appellate court, sitting as a court of review, will not interfere with nor control the exercise of such discretion thus vested in the trial court, except in cases of a clear abuse of such discretion. Authorities need not be cited upon propositions so well established. A number of authorities are cited and relied on by respond-

ent's counsel in support of their contention that the stipulation was properly vacated. We have examined such authorities, and find nothing therein contained which furnishes much light or assistance under the facts here presented. They merely announce in a general way the principle that trial courts possess the power to relieve and will, in the exercise of a sound discretion, relieve a party from the effects of stipulations of facts, not true, if, as stated in Richardson v. Musser, 54 Cal. 196, "the application is made in proper time;" or, as stated in Keens v. Robertson, 46 Neb. 837, 65 N. W. 897, "when their enforcement would result in serious injury to one of the parties, and the other party would not be prejudiced by their being set aside."

We take it, however, to be reasonably well settled that the making of such stipulations should be encouraged by the courts, rather than discouraged, and enforced by them unless good cause is shown to the contrary. Lewis v. Summer, 13 Met. 269; Lincoln v. Lincoln Street R. Co. 67 Neb. 469, 93 N. W. 766. See also 20 Enc. Pl. & Pr. p. 668, and cases cited. The case of Lincoln v. Lincoln Street R. Co. supra, is particularly in point under a state of facts quite analogous to those in the case at bar. There, a stipulation had been entered into embracing thirty-eight paragraphs covering most of the issues. At the trial plaintiff asked to be relieved from a portion of such stipulation upon the ground that the facts stipulated were not true, and counsel claimed to have been misled in agreeing to and signing the same. In sustaining the ruling of the trial court in refusing to relieve plaintiff therefrom, the court, among other things, said: "It would also seem that the application came too late to be entertained by the court. The plaintiff had made its case and rested. It had put in evidence all of the stipulation, except that portion of it which defendants were then attempting to introduce, and it would have been unjust at that stage of the proceedings to deny the defendants the benefit of these paragraphs. Yet counsel insist that the court, in the exercise of its discretion, ought to have sustained the objection and granted their request. We cannot assent to this proposition. Paragraph 15 fixed the time when the bonds and mortgage in question were delivered to the New York Security & Trust Company, and stipulated that they were sold to bona fide purchasers for value, without knowledge or notice of any of the matters mentioned in the stipulation, except such

20 N. D.—14.

constructive notice, if any, as was imparted by the corporate records of the Street Railway Company, and of the city of Lincoln and the laws of this state. Paragraph 16 contains practically the same statements as to the bonds and mortgage executed and delivered to the New York Guaranty & Indemnity Company. . . . If the court had sustained the objection and granted the request, the result would have been a mistrial. It would have rendered it necessary to retry the whole case, and to require this to be done would have been an abuse of discretion. Stipulations and agreements like the one in question should be encouraged and sustained by the court." Citing numerous authorities, including Van Horn v. Burlington, C. R. & N. R. Co. 69 Iowa, 239, 28 N. W. 547, from which case they quote with approval the following language: Where a party to a suit has entered into a written stipulation admitting that a town ordinance was valid and in full effect at the time of an accident, he cannot be relieved from it simply on the ground that he was ignorant when he entered into it, and that the ordinance was invalid for want of publication. Ryan v. New York, 154 N. Y. 331, 48 N. E. 512, is also quoted from with approval.

Parties should not be relieved from stipulations except for good cause shown, and the application should be seasonably made. Delay in asking for relief may defeat the application. 20 Enc. Pl. & Pr. pp. 662, 666, and cases cited.

Applying these fundamental and well-established rules to the facts in the case at bar forces us to the conclusion that the making of the order was a gross abuse of discretion. The application to be relieved from the stipulation was made nearly five years after the stipulation was entered into. Such stipulation was entered into at the solicitation of respondent's counsel, in the utmost good faith, without the least attempt to mislead, or taking undue advantage of respondent's counsel by counsel for defendant, and after mature deliberation by both counsel. For nearly five years defendant's counsel relied in good faith upon such stipulation as stating the true facts, and the cause was tried, submitted, and decided without any intimation whatsoever that such stipulation did not recite the true facts. Not only this, but the showing on which such order was granted nowhere makes it appear that the facts thus stipulated are untrue. On the contrary it is stated in the affidavit of plaintiff's counsel that there is no evidence available to show what

the true facts are. Opposed to this is the affidavit of defendant's counsel, positively stating, in effect, that the facts thus stipulated are true, and that it was definitely understood and agreed that the sole question left open for determination in the trial was the date on which the Railway Company constructed its grade or roadbed over said land, and the only evidence offered in the trial, aside from the stipulation, related to such issue. Counsel for plaintiff do not contend that, if relieved from such stipulation, they will be able, upon another trial, to establish the fact to be other or different than as stipulated. They merely contend, in fact, that they are entitled to have such fact rest on a mere presumption or inference, but there is no reasonable probability that the fact thus stipulated can be shown to be untrue.

In view of the showing made, we are entirely clear that the granting of the order complained of, in so far as it relieved plaintiff from the stipulation of facts, was an abuse of discretion.

For these reasons the order is reversed. All concur.

ELLSWORTH, J., being disqualified, did not participate; HONORABLE W. C. CRAWFORD, of the tenth judicial district, sitting in his place by request.

